I respectfully dissent from the majority's decision to reverse the Deputy Commissioner's Opinion and Award in the instant matter. The Deputy Commissioner correctly analyzed the competent evidence in this case, applied the appropriate law and came to the conclusion mandated by the evidence.
The record is clear that plaintiff was able to work following the incident with her arm on April 10, 1996, until the defendant-employer discharged her for safety violations on April 30, 1996. There is no evidence that plaintiff was unable to work between April 20 and the time the Form 21 Agreement was approved on June 24, 1996. In fact, plaintiff worked at a number of jobs during the interim, the last of which was June 22, 1996. Plaintiff's employment records with Olsen Staffing Services do not reflect any arm problems and show her working for several days at one position commencing July 31, 1996, until she called in about her arm hurting on August 5, 1996. Stip. Ex. 5 at 130. Furthermore, the records reflect that she reported that she was again available for work starting on March 10, 1997. Id.
Without corroborating medical testimony, the majority finds that plaintiff continues to be temporarily totally disabled. Based on a videotape and surveillance report that showed plaintiff engaging in vigorous aerobic exercise and weightlifting in January 1997, all three of plaintiff's treating physicians were of the opinion that she could return to work without restriction.
After viewing the videotape and surveillance report, Dr. Chipley wrote to Lisa Post of Lumberman's Mutual Casualty on February 26, 1997, "[I]t is obvious that Mrs. Gore has no permanent partial disability as a result of her on the job injury. She can return to work at full duty status at anytime without restrictions." Stip. Ex. at 110. In response to the same evidence and inquiry, Dr. Esposito wrote to Ms. Post on March 18, 1997, stating "I spent a fair amount of time looking at the tape. Based on this evaluation, I feel that she has reached maximal medical improvement and there would be no restrictions on her job whatsoever. Also, I do not feel any need for a permanent partial disability she has no limitations and no disability." Id. at 107. In a March 20, 1997, letter to Ms. Post after reviewing the surveillance report even Dr. White wrote, "I would agree that lifting of all her work restrictions is appropriate. She can return to work full duty at any time." Id. at 112. Furthermore, Dr. White testified that "if she could do the activities she was performing in that video that she would be able to [do] pretty much any type of functional work" Depo. at 24-25. Most telling, however, is a letter from Dr. White to defendant-employer's counsel on April 4, 1997, following an office visit with plaintiff on April 3, which states that "Based on the analysis of the information present, it was quite obvious that Ms. Gore would be able to perform her duties at work without restriction if she is able to tolerate this in her off time activities, she should be able to also tolerate it at work." Stip. Ex. 2 at 19.
Dr. White's final disability rating of plaintiff on April 22, 1997, of "10% permanent partial disability to right arm secondary to pain and weakness" was based on relatively subjective evidence. Depo. Ex. 2 at 7. The majority, however, find a problem with Drs. Chipley and Esposito finding no disability based on objectively viewing the videotape of plaintiff lifting weights and engaging in vigorous exercise and activities.
This case is not unlike that of In re: Stone v. G GBuilders, where the Supreme Court found that a videotape of the plaintiff engaging in various physical activities, along with medical evidence that plaintiff retained no permanent partial impairment and could return to his regular work activities, was sufficient to rebut the continuing presumption of continued disability. In re: Stone v. G G Builders, 346 N.C. 154, seealso IC Rule 404(1). In the instant matter, all of the plaintiff's treating physicians agree that based on the videotaped and surveillance report evidence that plaintiff can return to work without restriction. Two of the three physicians found no permanent partial disability. Given that plaintiff was videotaped lifting 40 pounds weights, it is difficult to believe that she suffers from any weakness sufficient to give her a permanent partial disability.
For these reasons, I believe that any inability of plaintiff to be gainfully employed is not caused by the April 20, 1996, injury to her arm, but is due to plaintiff's continuous history of short term temporary employment and her lack of reasonable efforts under the circumstances to obtain gainful employment.
This 17th day of June 1998.
 S/ _________________ DIANNE C. SELLERS COMMISSIONER
DCS/jlr