The transcript of the hearing before Deputy Commissioner Jones was filed on May 9, 2000. Pursuant to Rule 701(2) plaintiff, who is unrepresented, was required to submit a Form 44 stating with particularity the grounds for appeal within 25 days of receipt of the transcript. Plaintiff submitted the Form 44, which was date stamped received by the Commission on June 6, 2000 and which stated his appeal with particularity to the Commission. Apparently, the Form 44 was not mailed to defendant at that time. Including days for mailing the transcript and receipt by plaintiff, the time frame is in close proximity to the 25 days required by Rule 701. Furthermore, defendant, who is represented by counsel, was more than likely aware that the main issue in question is that of a change of condition and the two year bar pursuant to N.C. Gen. Stat. 97-47. Under the circumstances and, in particular, because plaintiff is unrepresented, the requirements of Rule 701 are waived pursuant to the Commissions discretion under Rule 801. Therefore, defendants motion to dismiss is hereby Denied and the Commission instead rules on the merits as follows.
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award with the exception of certain modifications for clarification.
***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant is a duly qualified self-insured.
4. Plaintiff suffered a compensable injury by accident on January 17, 1994 when he injured his lower back.
5. Plaintiff earned an average weekly wage of $613.97 yielding a weekly compensation rate of $409.33. The parties entered into a Form 21 Agreement on May 4, 1994. This agreement was approved by the North Carolina Industrial Commission on July 26, 1994.
6. Plaintiff received temporary total disability compensation from January 18, 1994 until January 25, 1995 in the amount of $22,811.43. Plaintiffs last check was forwarded on or about January 23, 1995.
7. A Form 24 was approved by Special Deputy Commissioner Tracey H. Weaver on January 13, 1995 allowing defendants to terminate compensation effective June 3, 1994 when plaintiff was returned to work at full duty without restrictions.
8. Judicial Notice is taken of a letter dated February 16, 1995 sent to plaintiff indicating that he had received an over payment of $13,827.00 in his claim.
9. Plaintiffs medical records were stipulated into evidence as Stipulated Exhibit 1.
10. Correspondence to plaintiff from defendants was stipulated into evidence as Stipulated Exhibit 2.
11. The issue is whether plaintiffs claim should be barred pursuant to N.C.G.S. 97-47.
***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-two (42) years old. Plaintiff received a high school diploma and a Bachelor of Science in Physical Education and Health from Fayetteville State University.
2. Plaintiff began working for defendant-employer in September 1986 as a truck driver dockworker.
3. On January 17, 1994, plaintiff was moving an engine. He and another person were in the process of setting the engine down when the other person let go of his end and the weight shifted on to plaintiff. Plaintiff felt his back give way in immediate pain.
4. Pursuant to a Form 21, plaintiffs injury to his lower back was accepted as a compensable injury and temporary total disability compensation was paid pursuant to that agreement.
5. Plaintiff was diagnosed with a lumbosacral strain and treated conservatively by Jeffrey L. Gross, M.D. of Jackson Orthopedic Clinic. On April 7, 1994, Dr. Gross released plaintiff to return to light work with lifting no greater than 15 to 20 pounds. However, defendant-employer did not have work available within plaintiffs initial restrictions. Thereafter, on May 5, 1994, Dr. Gross reevaluated plaintiffs work restrictions and released plaintiff to return to work with lifting no greater than 50 pounds.
6. By letter dated May 6, 1994, defendant-employer notified plaintiff that a rehabilitation nurse had been assigned to coordinate his medical care.
7. On May 12, 1994, Dr. Gross approved plaintiffs light duty return to work offered by plaintiffs terminal manager Mr. Tom Linder. On that day, Mr. Linder had three conversations with plaintiff offering him light duty work that would begin on May 16, 1994. Plaintiff failed to report to work on May 16, 17, 18, and 19, 1994. Furthermore, plaintiff did not contact the employer or obtain a medical excuse for his absences. Therefore, by letter dated May 19, 1994, plaintiff was terminated pursuant to company policy from his employment with defendant-employer. Plaintiff was aware of company policy concerning absences and the consequences for such absences. In fact, on September 24, 1986, plaintiff signed a written acknowledgement of company rules policy including an understanding that violation could result in termination. Based upon the evidence of record, it is inferred that any employee would have been terminated for absences under these circumstances.
8. While plaintiff indicated that he did not return to work because of the assignment of a rehabilitation nurse, he was fully aware of the direction to return to work on May 16, 1994 based on the doctors release and approval of work, which was suitable to his condition. Furthermore, the rehabilitation nurse did not indicate to plaintiff that he should not return to work as scheduled and plaintiff did not follow up with his treating physician or defendant regarding his scheduled return to work or the assignment of the nurse. There is no evidence plaintiff was not able to return to this employment at this time.
9. Moreover, regardless of plaintiffs earlier work restrictions and termination, plaintiff was released to return to full duty work without restriction on June 3, 1994.
10. In fact, plaintiff returned to work with another employer, Onslow County Schools, in June 1994.
11. Significantly, although plaintiff contacted Dr. Gross for additional Motrin in June 1994 and was seen in follow up on July 13, 1994, Dr. Gross did not change plaintiffs work status and maintained a full duty release. Thereafter, plaintiff was not seen by Dr. Gross until December 2, 1994 after which time he had no back problems until April 26, 1999. In fact, plaintiff did not return to his treating physician regarding to his back complaints until April 26, 1999. Plaintiff continued to work during this time period.
12. Plaintiff has had two (2) other workers compensation claims that he handled by himself. Therefore, plaintiff has some knowledge of the Workers Compensation procedures and forms.
13. A Form 28B was filed on January 23, 1995 thereby notifying plaintiff of his rights with regard to filing for a change of condition.
14. Plaintiff did not file a request for a change of condition until four years after January 23, 1995 when he filed a Form 33 on February 3, 1999. This filing was after the two-year statute of limitation lapsed.
***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Although, pursuant to the Form 21, defendant had the burden of proving that plaintiff was no longer disabled, defendant has rebutted the presumption of disability. First, plaintiffs benefits could have been suspended for plaintiffs unjustified refusal of suitable light duty employment on May 19, 1994 when plaintiff was terminated for cause for which another employee would have been terminated. Although this is only grounds for suspension of plaintiffs benefits, because of the medical evidence of record including plaintiffs subsequent full duty release and other evidentiary factors including plaintiffs constructive refusal of employment and his obtaining subsequent employment in June 1994, defendant is entitled to terminate plaintiffs temporary total disability benefits as of June 3, 1994 when plaintiff was released to full duty without restrictions and the presumption of disability was rebutted.Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 587
(1996); Harrington v. Adams-Robinson Enterprises, 128 N.C. App. 496,498, 495 S.E.2d 377, 379, revd on other grounds, 349 N.C. 218,504 S.E.2d 786 (1998); In re Stone v. G G Builders, 346 N.C. 154, 157,484 S.E.2d 365, 367 (1997).
2. A claim for a change of condition relating to a compensable injury must be filed within two (2) years after the date of the last payment of compensation. However, plaintiff did not file a claim for a change of condition with the Commission within the two-year period prescribed by N.C.G.S. 97-47.
3. Plaintiff is, therefore, entitled to no compensation under the provisions of the Workers Compensation Act. N.C.G.S. 97-47.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiffs claim must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
This the ___ day of October 2000.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/_______________ CHRISTOPHER SCOTT COMMISSIONER