HUDSON, Judge.
 

 Deputy Commissioner Wanda Blanche Taylor heard this case on 27 September 2001, and filed an opinion and award on 16 October 2002, denying plaintiff Vickie Branson's claim. Plaintiff appealed to the Full Commission, and on 13 May 2003, a divided panel of theCommission affirmed with modifications the opinion and award of the deputy commissioner. Plaintiff appeals. As discussed here, we affirm.
 

 We begin with a summary of the facts as found by the Commission. Plaintiff is a registered nurse, age thirty-eight at the time of the hearing. In 1996, prior to her employment with defendant, she was allergic to cigarette smoke and was diagnosed with asthma, hyper-reactive airway disease and recurring allergic rhinitis related to her exposure to new carpet in a previous workplace. Plaintiff visited her doctor regularly for treatment of ongoing respiratory problems, asthma and allergies.
 

 In late June 1999, plaintiff interviewed for a job at defendant's Mebane plant, and took a tour of the facility and its medical department. In July 1999, defendant offered and plaintiff accepted the position of plant nurse, and plaintiff began work on 19 July 1999. The nurse's office was uncarpeted, but shared a wall with the manufacturing plant. Defendant's plant used chemicals in the manufacture of automotive drive shafts. Plaintiff noticed a yellow film forming daily on the surfaces in her office, and sometimes saw a yellow film in the air at the plant. She visited her physician again in October 1999 and February 2000, complaining of headaches and upper respiratory and chest symptoms.
 

 In February 2000, plaintiff accepted a nursing job at Duke University, and began work there 6 March 2000. On 1 March 2000, plaintiff submitted an application for short-term disability payments from defendant, stating that she had been continuouslydisabled beginning 21 February 2000. She received disability benefits from defendant from that date through 30 April 2000. By July 2000, plaintiff had left her position at Duke and was working as a staff nurse at Kernodle Clinic. Plaintiff made no respiratory complaint to her physician while working at Duke. Plaintiff continued to have symptoms related to allergies and hyper-reactive airways while at Kernodle Clinic and at her later jobs.
 

 In denying plaintiff's claim for benefits, the Commission reached the following conclusions of law:
 

 1. Plaintiff has failed to establish an accidental injury or occupational disease. Plaintiff's reaction to odors and chemicals at GKN Automotive and Duke University are due to personal sensitivity to odors and chemicals which is part of her pre-existing hyperactive [sic] airways disease. There is no evidence that because of the exposure to odors at work that plaintiff has sustained a disease or injury. Rather, she has at most sustained a temporary period of exacerbation of the symptoms for her pre-existing hyperactive [sic] airways disease, which because of the nature of her condition may have occurred even without the exposures at work.
 

 2. Plaintiff has not proven that she developed or aggravated an occupational disease, which was due to, [sic] causes and conditions characteristic of and peculiar to her employment and which was not an ordinary disease of life to which the general public was equally exposed. Plaintiff's condition was caused by her personal, unusual sensitivity to small amounts of odors, chemicals , or other irritants, which is not compensable.
 

 3. Further, plaintiff has not established that her condition is disabling. Disability is not merely the measure of plaintiff's pre-injury wage and her post-injury wage. The issue if plaintiff's ability to earn wages, or earning capacity, after the injury. Plaintiff has notestablished that she was not able to earn her wages at GKN Automotive or Duke University or in other available positions in the nursing profession.
 

 The scope of our review of a decision of the Industrial Commission has been clearly delineated by our Supreme Court: "(1) the full Commission is the sole judge of the weight and credibility of the evidence, and (2) appellate courts reviewing Commission decisions are limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law."
 
 Deese v. Champion Int'l Corp.,
 

 352 N.C. 109
 
 , 116,
 
 530 S.E.2d 549
 
 , 553 (2000). Further, in our review we do "not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding," without regard to whether there was evidence that would have supported contrary findings.
 
 Adams v. AVX Corp.,
 

 349 N.C. 676
 
 , 681,
 
 509 S.E.2d 411
 
 , 414 (1998) (citation and quotation marks omitted),
 
 reh'g denied,
 

 350 N.C. 108
 
 ,
 
 532 S.E.2d 522
 
 (1999). In doing so, we are required to view the evidence in the light most favorable to the plaintiff.
 

 Id.
 

 Plaintiff has not challenged any of the Commission's findings, and thus they are binding on this Court.
 

 Plaintiff argues that the Commission erred by holding plaintiff to a higher standard of proof than established by law, when it failed to apply the "thin skull" doctrine in her case. For the reasons discussed below, we disagree. The requirements of proof for a compensable occupational disease claim are well established:
 

 For a disease to be occupational under G.S. 97-53(13) it must be (1) characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be a causal connection between the disease and the [claimant's] employment. . . . [T]he first two elements are satisfied if, as a matter of fact, the employment exposed the worker to a greater risk of contracting the disease than the public generally. The greater risk in such cases provides the nexus between the disease and the employment which makes them an appropriate subject for workmen's compensation.
 

 Rutledge v. Tultex Corp./Kings Yarn,
 

 308 N.C. 85
 
 , 93-94,
 
 301 S.E.2d 359
 
 , 365 (1983) (citation and quotation marks omitted).
 
 Rutledge
 
 is often cited as establishing these two requirements for proving occupational disease under G.S. § 97-53(13): (1) "increased risk" and (2) "significant contribution" or "causation."
 

 Plaintiff failed to satisfy the two requirements of
 
 Rutledge
 
 for establishing a compensable occupational disease. The Commission concluded that she had failed to establish that she was at an increased risk of contracting her condition and that she failed to establish a causal link between her condition and her employment, and those conclusions are supported by the findings.
 

 Plaintiff argues that the Commission erred as a matter of law in failing to apply the "thin skull" doctrine and conclude on that basis that she had proved increased risk. However, the Commission found that plaintiff's condition was caused by her pre-existingallergies and chemical and odor sensitivities, and not by her exposures in her employment with defendant. In addition, the Commission's extensive findings establish that while plaintiff's exposures both at work and at home sometimes triggered symptoms, they resulted in no disability as defined by the Worker's Compensation Act. The Commission found specifically
 

 34. The evidence fails to establish that plaintiff has sustained an injury or disease from her exposure to chemicals or chemical odors at GKN Automotive or Duke University. . . .
 

 Thus even if her employment placed her at an increased risk of contracting those conditions as compared to the general public, which the Commission did not find, her claim was properly denied based on these findings.
 

 "An illness is not an occupational disease unless the aggravation of an underlying or pre-existing condition occurs in the context of employment that places her at an increased risk of contracting the disease."
 
 Hobbs v. Clean Control Corp.,
 

 154 N.C. App. 433
 
 , 440,
 
 571 S.E.2d 860
 
 , 864 (2002);
 
 see also Pitillo v. N.C. Dept. of Environmental Health and Natural Resources,
 

 151 N.C. App. 641
 
 ,
 
 566 S.E.2d 807
 
 (2002) (holding claimant's psychological illness not a compensable occupational disease, despite being caused in part by workplace job performance review, where evidence failed to establish that conditions of employment placed her at any increased risk for emotional problems);
 
 Norris v. Drexel Heritage Furnishings, Inc.,
 

 139 N.C. App. 620
 
 ,
 
 534 S.E.2d 259
 
 (2000),
 
 cert. denied,
 

 353 N.C. 378
 
 ,
 
 547 S.E.2d 15
 
 (2001) (holding althoughplaintiff's fibromyalgia was caused or aggravated by her employment with defendant, it was not an occupational disease because evidence did not show that plaintiff's employment with defendant placed her at an increased risk of contracting or developing fibromyalgia as compared to the general public).
 

 Based on the unchallenged findings of fact, the Commission properly concluded that plaintiff did not prove she sustained an occupational disease, and properly denied her claim.
 

 Affirmed.
 

 Judges McCULLOUGH and LEVINSON concur.
 

 Report per Rule 30(e).