NANCY NUTTALL, Employee, Plaintiff
v.
HORNWOOD, INC., Employer, THE HARTFORD, Carrier, Defendants.
No. COA08-395.
Court of Appeals of North Carolina.
Filed January 6, 2009.
This case not for publication
George E. Crump III, for plaintiff-appellant.
Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Matthew D. Glidewell, for defendant-appellees.
WYNN, Judge.
Plaintiff-Employee Nancy Nuttall appeals from an Opinion and Award of the North Carolina Industrial Commission, claiming total and permanent disability resulting from a compensable injury by accident on 17 May 2005. For the reasons stated herein, we affirm the Opinion and Award of the Commission.
Ms. Nuttall, age fifty-four, was diagnosed with cerebral palsy at birth and continues to exhibit associated symptoms. She also suffers from scoliosis. She began working as a switchboard-operator and finishing clerk for Defendant-Employer Hornwood, Inc. in 1989. Ms. Nuttall's job was largely sedentary; she was responsible for filing, paperwork, and occasionally answering the phone. However, she "used a buggy at work to assist her in walking around the plant floor and picking up samples for her inspection work as a finishing clerk and to steady herself as she walked."
On 17 May 2005, Ms. Nuttall was "walking toward the break room when the back end of her buggy ran into a hole. [She] fell on her left side, with the buggy on top of her." She was taken to the emergency room where she complained of lower arm pain, back and neck pain, and bruising on her left leg. The x-rays taken at this time showed a "mild, age indeterminate compression fracture of the L2 vertebrae." Defendant Hornwood and its insurance carrier, Defendant The Hartford (collectively, "Defendants"), stipulated that Ms. Nuttall suffered a "compensable injury by accident in the course and scope of her employment as a finishing clerk" on 17 May 2005 but contested Ms. Nuttall's claim before the Commission that she was permanently and totally disabled.
In addition to the accident on 17 May 2005, Ms. Nuttall has an extensive medical history that includes back pain. In April 2004, she began monthly treatments with Ms. Gerri Patterson of Pain Management Groups of North Carolina for her chronic lower back pain, mobility problems, and leg pain. During this time, her pain levels "waxed and waned" with two noted periods of increased pain on 13 January 2005 and 8 February 2005. On 7 April 2005, prior to her injury, Ms. Nuttall experienced increased lower back pain, stress, and difficulty with mobility. At that time, Ms. Patterson suggested she "look into obtaining disability" due to her declining condition.
After the accident, Ms. Nuttall sought treatment from Dr. Obinna Igwilo on referral from Defendant's company nurse. Dr. Igwilo examined Ms. Nuttall's x-rays and noted some tenderness in her lower back. In his deposition, he was unable to say to a reasonable degree of medical certainty that the compression fracture or any of her current conditions were related to her 17 May 2005 injury. On referral from Dr. Igwilo, Ms. Nuttall began treating with Dr. Henry Moyle, a neurosurgeon, for her back pain. He performed multiple MRIs on Ms. Nuttall that revealed degenerative disc disease, disc herniation, and a mild bulge. He testified that the only basis he had to "draw any causal connection between [her] complaints and her symptoms was the temporal relationship between the two." On 12 September 2005, Ms. Nuttall saw another neurosurgeon, Dr. Sivakum Jaikumar, who was similarly unable to connect Ms. Nuttall's fall with her then-current symptoms, including the bulge and swelling in her legs.
Ms. Patterson, Ms. Nuttall's pain management nurse practitioner, further evaluated her on 21 August 2006, noting that, at the time, her pain was being controlled with medication. In contrast to the depositions of the medical doctors, Ms. Patterson opined that Ms. Nuttall's injury at work either caused or aggravated her compression fracture and herniated disc, and aggravated her pre-existing back pain. However, Ms. Patterson did concede that there was nothing other than the temporal relationship between Ms. Nuttall's fall and her worsening symptoms that led her to connect the two.
On appeal from the Commission's Opinion and Award, Ms. Nuttall argues that the Commission erred by (I) failing to adopt the Deputy Commissioner's findings of fact seventeen and thirty-one, related to her physical limitations prior to her compensable injury by accident; (II) concluding that her medical condition, subsequent to 21 August 2006, was not related to her compensable injury; (III) concluding that she was not entitled to any further medical treatment after 21 August 2006 because her present condition was not related to her compensable injury; and (IV) concluding that she is not permanently and totally disabled and not awarding her permanent and total disability benefits.
Preliminarily, we point out that when reviewing an Opinion and Award from the Industrial Commission, our inquiry is limited to "whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." Deese v. Champion Int'l Corp., 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000) (emphasis added). This Court is not tasked with re-weighing the evidence presented to the Commission. Rather, this "[C]ourt's duty goes no further than to determine whether the record contains any evidence tending to support the finding[s]." Adams v. AVX Corp., 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (citation omitted). If there is any evidence at all, taken in the light most favorable to the Plaintiff, the findings of fact must stand, even where there is substantial evidence to support a contrary finding. Id. After careful review of the record, we affirm the Opinion and Award of the Commission.

I.
First, Ms. Nuttall contends that the Commission erred by failing to adopt the Deputy Commissioner's findings of fact seventeen and thirty-one, related to her physical limitations prior to her compensable injury by accident. This argument is without merit. "Whether the full Commission conducts a hearing or reviews a cold record, N.C.G.S. § 97-85 places the ultimate fact-finding function with the Commissionnot the hearing officer." Deese, 352 N.C. at 115, 530 S.E.2d at 552. "The Commission may strike the deputy commissioner's findings of fact even if no exception was taken to the findings." Jenkins v. Piedmont Aviation Servs., 147 N.C. App. 419, 427, 557 S.E.2d 104, 109 (2001) (internal quotation marks and citation omitted), disc. review denied, 356 N.C. 303, 570 S.E.2d 724 (2002). Further, the findings at issue do not support Ms. Nuttall's claim that the ultimate decision in this case  whether Ms. Nuttall's ongoing symptoms were related to her compensable injurywas in error. Rather, to the extent that they address this issue, the findings demonstrate that the physical difficulties she was experiencing were unrelated to her back pain.

II.
Next, Ms. Nuttall contends that the Commission erred in concluding that her medical condition, subsequent to 21 August 2006, was not directly related to her compensable injury. Ms. Nuttall specifically contests the following findings of fact:
25. Although plaintiff testified she has continued to experience significant back pain since her injury, she ultimately conceded that by August 21, 2006, her pain was a four out of ten. None of the doctors that treated plaintiff offered any further treatment other than continued pain management, which plaintiff received prior to her injury by accident. Plaintiff's condition with respect to her back is essentially the same now as it was prior to the accident.
. . .
29. Based upon the greater weight of the evidence, plaintiff failed to show that she suffered an L2 compression fracture or a T11-12 herniation as a result of the May 17, 2005 injury by accident. Based upon the greater weight of the evidence, defendants have shown that any medical treatment plaintiff has received since August 21, 2006 is not related to her compensable injury by accident.
30. Plaintiff's ongoing conditions, including back pain, venous thrombosis, cellulites [sic], cardiac problems, and certain falling episodes in 2006 are not related to her fall. Defendants are not responsible for ongoing medical treatment.
While Ms. Nuttall argues there is no competent evidence in the record to support these findings, we disagree. The record includes considerable evidence to support the Commission's findings. Ms. Nuttall's own deposition and medical records support the Commission's finding that Ms. Nuttall's back condition is essentially the same now as it was prior to the accident. The deposition and medical records indicate that, by 21 August 2006, Ms. Nuttall was taking the same dosage and type of pain medication that she had been taking to control her back pain prior to her compensable injury. This evidence also indicates that Ms. Nuttall's pain level as of 21 August 2006 had returned to a level of 4/10, the same pain level she exhibited just one month prior to her injury.
Additionally, the depositions of Drs. Igwilo, Moyle, and Jaikumar indicate that none of the physicians who treated Ms. Nuttall were able to connect her compensable injury to her ongoing pain with any reasonable degree of medical certainty. Although Ms. Patterson, Ms. Nuttall's nurse practitioner, opined that Ms. Nuttall's injury either "aggravated or increased her back pain symptoms[,]" she was unable to identify the specific cause of Ms. Nuttall's continued pain. Further, the Commission's findings of fact twelve, sixteen, eighteen, and twenty, which are uncontested by Ms. Nuttall and thus conclusive on appeal, provide evidence that Ms. Nuttall's symptoms, including, among others, chest pain, leg swelling, cellulitis, and venous thrombosis, were not related to her back injury. Despite Ms. Nuttall's claim to the contrary, the record includes competent evidence to support the Commission's findings that Ms. Nuttall's medical condition subsequent to 21 August 2006 was not related to her compensable injury.

III.
Ms. Nuttall next argues that the Commission erred in concluding that she was not entitled to any further medical treatment after 21 August 2006 because her present condition was not related to her compensable injury. In order for a plaintiff with a compensable injury to be entitled to additional compensation for medical treatment, the treatment at issue must be "directly related to the original compensable injury." Pittman v. Thomas & Howard, 122 N.C. App. 124, 130, 468 S.E.2d 283, 286, disc. review denied, 343 N.C. 513, 472 S.E.2d 18 (1996). This Court has repeatedly held: "[T]he findings of fact of the Industrial Commission are conclusive on appeal when supported by competent evidence, even though there be evidence that would support findings to the contrary." Adams, 349 N.C. at 681, 509 S.E.2d at 414 (internal quotation marks and citation omitted). Therefore, we must treat as conclusive the Commission's findings that Ms. Nuttall's medical symptoms after 21 August 2006 were not related to her compensable injury. Accordingly, we find no error in the Commission's determination that (1) Defendants should not be held responsible for the treatment of her condition after 21 August 2006, (2) Defendants are entitled to a credit for payments made since that time, or (3) Ms. Nuttall's claims after 21 August 2006 for further benefits under the N.C. Gen. Stat. 97 should be denied.

IV.
Finally, Ms. Nuttall argues that the Commission erred in concluding that she is not permanently and totally disabled, and in not awarding her permanent and total disability benefits. Again, the question before this Court is "whether the findings of fact support the Commission's conclusions of law." Deese, 352 N.C. at 116, 530 S.E.2d at 553. Here, the Commission's findings of fact adequately support its conclusion that Ms. Nuttall is not permanently and totally disabled.
Under N.C. Gen. Stat § 97-2(9) (2007), disability is defined as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment" and not by the degree of the employee's physical disablement. See Frazier v. McDonald's, 149 N.C. App. 745, 562 S.E.2d 295 (2002) (noting that the key issue before the Court was not the extent of employee's physical infirmity but rather whether she was incapable of earning wages as a result of her injury), cert. denied, 356 N.C. 670, 577 S.E.2d 117 (2003) . The burden of proving disability is with the employee. Russell v. Lowes Prod. Distribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). An employee may discharge this burden in one of four ways:
(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.
Id. (internal citations omitted). Ms. Nuttall failed to provide any evidence to the Commission to discharge her burden. As noted by the Commission in an uncontested finding of fact, "[p]laintiff has not returned to work at any time since the May 17, 2005, accident. Furthermore, plaintiff has made no effort to look for work since her fall." While Ms. Nuttall testified regarding her present physical limitations, difficulty walking, getting up and down, putting on shoes, etc., she failed to connect these ailments to her compensable injury or her inability to work.
In light of the absence of evidence in support of her claim of total and permanent disability, the Commission's conclusion that Ms. Nuttall failed to meet her evidentiary burden and is thus, not disabled, is affirmed.
Affirmed.
Judge BRYANT concurs.
Judge ARROWOOD concurs prior to 31 December 2008.
Report per Rule 30(e).