WANDA JEFFERSON HOOKER, Employee, Plaintiff v. STOKES-REYNOLDS HOSPITAL/NORTH CAROLINA BAPTIST HOSPITAL, INC., Employer; SELF-INSURED, Defendants

No. COA02-1361

(Filed 4 November 2003)

**1. Workers' Compensation— misrepresentation—medical history**

The Industrial Commission did not err in a workers' compensation case by allegedly failing to make a finding about whether plaintiff employee made misrepresentations regarding her medical history during the interview process when applying for a CNA job with defendant hospital, because the evidence supports the Commission's finding that plaintiff disclosed her prior injury before being hired.

**2. Workers' Compensation— misrepresentation defense— medical history**

Neither the Industrial Commission nor the Court of Appeals has the authority to adopt a misrepresentation defense regarding an employee's medical history if it is not found in the Workers' Compensation Act.

**3. Workers' Compensation— continuing temporary total disability—maximum medical improvement**

The Industrial Commission's award in a workers' compensation case of continuing temporary total disability is affirmed,

HOOKER v. STOKES-REYNOLDS HOSP.

[161 N.C. App. 111 (2003)]

because: (1) reaching maximum medical improvement does not affect an employee's right to continue to receive temporary disability benefits; and (2) the hearing and deposition evidence, medical records, and stipulated fact six support the Commission's findings that plaintiff was out of work under medical care due to her injury, that she applied for and received unemployment benefits, and that she made reasonable efforts to obtain employment within her restrictions.

Appeal by defendants from Opinion and Award entered 7 May 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 19 August 2003.

*Maynard & Harris, L.L.P., by Celeste M. Harris, for plaintiff-appellee.*

*Womble, Carlyle, Sandridge & Rice, P.L.L.C., by Clayton M. Custer, Philip J. Mohr and Alison R. Bost, for defendant-appellants.*

HUDSON, Judge.

Defendants Stokes-Reynolds Hospital/North Carolina Baptist Hospital appeal from an opinion and award entered 7 May 2002 by the North Carolina Industrial Commission awarding plaintiff continuing total disability compensation, and temporary partial disability compensation, as well as attorney's fees and costs. We affirm.

Background

The following is a summary of the facts found by the Commission. In May 1995, while working as a truck driver for Direct Trucking of Mount Airy, plaintiff injured her ankle and back in a fall from her truck. She initially sought medical care only for her ankle, which was placed in a cast, and later saw an orthopedic spine specialist, on 15 June 1995. The orthopedist prescribed an anti-inflammatory medication, a self-care spine program and return to work. Plaintiff saw the orthopedist one final time on 17 July 1995 when he released her to work. However, because of the injury to her ankle, plaintiff was not able to return to work as a truck driver. Plaintiff settled her worker's compensation claim, and sought training for other work.

Plaintiff completed a certified nursing assistant ("CNA") class at Surry County Community College, and thereafter, in September 1996,

**HOOKER v. STOKES-REYNOLDS HOSP.**

[161 N.C. App. 111 (2003)]

applied for a job as a CNA with defendants. Plaintiff was interviewed by Karen Lawrence, the acute care unit manager for defendants. When asked about her physical ability to handle the CNA position, plaintiff told Ms. Lawrence about her fall in 1995.

Defendants then hired plaintiff, who worked without incident until 2 December 1998, when she sustained a back injury while helping a co-worker move a patient. Thereafter, plaintiff went to several physicians who ordered various diagnostic tests for her back, and eventually recommended surgery. On 31 August 1999, plaintiff's surgeon released her to return to work with restrictions on lifting, and a permanent impairment rating of 12.5% to her back.

The parties stipulated that plaintiff had been out of work under medical care between 4 December 1998 and 19 February 1999, and from 28 April 1999 through 7 May 2002. Between 20 February 1999 and 29 April 1999, she worked limited hours. Defendants terminated plaintiff from employment at the end of her leave of absence on 11 June 1999. Plaintiff then applied for and received unemployment benefits beginning 22 August 1999. Plaintiff sought compensation from defendants for her disability, and her claims were heard by Deputy Commissioner Kim L. Cramer, who denied the claims. On appeal, the Full Commission reversed the Deputy Commissioner, and awarded plaintiff compensation for on-going total disability (subject to a credit for unemployment benefits) and for a period of temporary partial disability, medical expenses, costs and attorney's fees. Defendants appeal.

## Analysis

On appeal defendants make two arguments. First, they contend that plaintiff misrepresented her physical ability when applying for the CNA job, and urge this Court to adopt the defense of misrepresentation as a complete bar to worker's compensation benefits. Defendants also argue that plaintiff failed to prove she was entitled to ongoing benefits. We affirm the award of the Commission.

The Supreme Court has articulated clearly the standard of appellate review in worker's compensation cases. When reviewing a worker's compensation decision, this Court must first consider whether any challenged findings of fact are supported by evidence in the record, and then determine whether those findings support the conclusions of law. *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). This Court does not weigh evidence, but rather only determines "whether the record contains any evidence

tending to support the finding." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (citation and quotation marks omitted), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999). The Commission is the "sole judge of the weight and credibility of the evidence." *Deese*, 352 N.C. at 116, 530 S.E.2d at 553. This means that the Commission's findings are binding if they are supported by any of the evidence, even if the evidence could also have supported a contrary finding. *Id.* at 115, 630 S.E.2d at 552-53. Finally, in making these determinations, this Court must view the evidence in the light most favorable to plaintiff. *Adams*, 349 N.C. at 681, 509 S.E.2d at 414.

I.

**[1]** Here, defendants first contend that plaintiff misrepresented her medical history when applying for the CNA job, and argue that the Commission failed to make a finding about whether plaintiff made misrepresentations during the interview process. The findings of the Commission indicate otherwise. Finding of fact 4 states that during the interview process, Karen Lawrence asked plaintiff about any injuries which might prevent her from performing the duties of a CNA, and "[p]laintiff told Ms. Lawrence about plaintiff's fall as a truck driver." By implication, this finding indicates that the Commission found that plaintiff did not misrepresent her history to Ms. Lawrence.

The evidence before the Commission supports this finding. At the hearing, Lawrence and another nurse employed by defendants testified that plaintiff would not have been hired had they known that the truck accident had included a back injury as well as an ankle injury. Plaintiff testified that she told Lawrence about the truck accident and did not mention her back injury because her back was no longer troubling her at that time; Ms. Lawrence asked her about injuries that might limit her ability to perform the job. This evidence supports the Commission's finding that plaintiff disclosed her prior injury before being hired. We do not concern ourselves with whether the evidence might support some other finding, because this Court's "duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Adams*, 349 N.C. at 681, 509 S.E.2d at 414. The Commission's finding of fact, in turn, adequately support its related conclusions of law.

Although the heading of argument I of defendants' brief refers to assignments of error 1 and 2, which challenge several findings of fact and all of the conclusions of law, they make no argument in the body

of the brief regarding any of the individual findings of fact. Thus, we deem assignment of error 2 (challenging findings 12, 16, 17, and conclusions 1 through 5) abandoned. *See* N.C.R. App. P. 28(b)(6). Most of defendants' first argument consists of urging this Court to adopt a new rule of law regarding the effect of a plaintiff's misrepresentations in worker's compensation cases.

[2] Because the Commission did not find any misrepresentation on the part of plaintiff, we need not reach the merits of defendants' contention that this Court should adopt a misrepresentation defense in worker's compensation cases. We do note, however, that neither the Industrial Commission nor this Court has the authority to adopt such a defense, if it is not found in the Worker's Compensation Act. Our Supreme Court "has warned against any inclination toward judicial legislation" in the construction of the Worker's Compensation Act. *Johnson v. Southern Indus. Constructors*, 347 N.C. 530, 536, 495 S.E.2d 356, 359 (1998).

## II.

[3] Defendants next argue that the Commission's award should be reversed because plaintiff did not prove her entitlement to on-going benefits. Defendants base their assignment of error on an assertion that temporary total disability (TTD) compensation must end once an injured worker reaches maximum medical improvement (MMI). This assertion is an inaccurate reflection of the law.

Our Supreme Court has recently affirmed this Court's holding in *Knight v. Wal-Mart*, 149 N.C. App. 1, 562 S.E.2d 434 (2002), *affirmed*, 357 N.C. 44, 577 S.E.2d 620 (2003), that reaching MMI does not effect an employee's right to continue to receive temporary disability benefits. In *Knight*, we explained that

The primary significance of the concept of MMI . . . is to delineate when "the healing period" ends and the statutory period begins in cases involving an employee who may be entitled to benefits for a physical impairment listed in N.C. Gen. Stat. § 97-31. In other words, MMI represents the first point in time at which the employee may elect, if the employee so chooses, to receive scheduled benefits for a specific physical impairment under N.C. Gen. Stat. § 97-31 (without regard to any loss of wage-earning capacity). MMI does not represent the point in time at which a loss of wage-earning capacity under N.C. Gen. Stat. § 97-29 or § 97-30 automatically converts from "temporary" to "permanent."

*Id.* at 16, 562 S.E.2d at 445. Although *Knight* had not been affirmed by the Supreme Court when defendants' brief was written, the issue has now been resolved. Thus, defendants' argument, that plaintiff is no longer eligible for TTD benefits simply because she has reached MMI, is without merit.

Defendants also argue that plaintiff is not entitled to any wage loss benefits because she did not make a reasonable effort to obtain other employment. To prove her entitlement to disability benefits, an injured worker must show: an incapacity following her injury to earn the same wages she had earned before the injury in the same employment; an incapacity after the injury to earn the same wages she had earned before her injury in other employment; and a causal connection between her injury and her incapacity to earn. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982).

The plaintiff bears the burden of proving her incapacity to earn the same wages as she received before the injury. This burden can be met in one of four ways:

> (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (internal citations omitted). In the instant case, plaintiff relies on the second of these factors to support her claim for disability benefits. Defendants contend that plaintiff failed to prove that she had made reasonable efforts to obtain employment, and that the Commission failed to make a finding about plaintiff's effort to find work.

Stipulated fact 6 states:

> 6. Plaintiff has been out of work under medical care during the dates of December 4, 1998-February 19, 1999 and April 28, 1999

through the present. Between February 20, 1999 and April 29, 1999, she worked limited hours.

In addition, findings 11 and 12 by the Commission indicate that her orthopedist "wrote plaintiff out of work" in April 1999, and released her to return to work with restrictions. In addition, finding 17 states that "[f]ollowing her release to return to work by Dr. Hayes, plaintiff applied for and received unemployment benefits beginning 22 August 1999." These findings are supported by the testimony from plaintiff and Dr. Hayes and, in turn, fully support the Commission's conclusions 2 and 3:

> 2. Plaintiff is entitled to compensation for her total disability at the rate of $161.57 per week for the period from 3 December 1998 up through and including 18 February 1999. On 19 February 1999 plaintiff returned to work with defendant-employer on a part-time basis. Subject to a credit for the unemployment benefits paid plaintiff, plaintiff is again entitled to compensation for her total disability from 27 April 1999 and continuing until plaintiff returns to work or further order of the Commission. N.C. Gen. Stat. §97-29.

> 3. For the period from 19 February 1999 up through and including 26 April 1999, plaintiff was temporarily partially disabled as a result of the compensable specific traumatic incident and is entitled to receive two-thirds of the difference between her pre-injury wage and the wages plaintiff earned working part-time. N.C. Gen. Stat. §97-30.

Further, to be eligible for unemployment benefits, one must conduct at least two in-person contacts with different employers on different days each week. North Carolina Employment Security Commission Regulation § 10.25. Plaintiff testified during the hearing that she complied with these requirements to receive unemployment benefits, and described her additional efforts seeking employment. The hearing and deposition evidence, medical records and stipulated fact 6 support the Commission's findings that plaintiff was out of work under medical care due to her injury, and that she applied for and received unemployment benefits, and made reasonable efforts to obtain employment within her restrictions. These findings, in turn, support the Commission's conclusion that she continues to be entitled to receive TTD benefits. Thus, we reject defendant's arguments.

CONCLUSION

For the reasons set forth above, we affirm the decision of the Industrial Commission.

Affirmed.

Judges WYNN and CALABRIA concur.