***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback, and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Stanback, with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Commission, and the Industrial Commission is the court of proper jurisdiction for this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of the parties.
3. With regard to the April 6, 2009 date of accident, the parties are subject to, and bound by, the provisions of the North Carolina Workers' Compensation Act.
4. An employee-employer relationship existed between Plaintiff and Defendant-Employer, CVS Caremark, on Plaintiff's April 6, 2009 date of injury.
5. The Third-Party Administrator (TPA) on the risk on the date of injury was GAB Robins Risk Management Services.
6. Defendants accepted the April 6, 2009 claim for an injury to Plaintiff's left hip, leg, and low back pursuant to an Industrial Commission Form 60 dated August 19, 2009.
7. Defendants authorized the following doctors and/or providers for the April 6, 2009 industrial accident: Dr. Donna Whitt of Chatham Primary Care; Dr. T. Craig Derian; Balanced Physical Therapy; and Dr. William Blau.
8. Plaintiff's average weekly wage is $323.93 with a corresponding compensation rate of $215.96.
9. Documents entered into evidence include the following:
 a. Stipulated Exhibit #1 — Pre-Trial Agreement
 b. Stipulated Exhibit #2 — Plaintiff's wage records
 c. Stipulated Exhibit #3 — Indemnity and medical payment printout
 d. Stipulated Exhibit #4 — Plaintiff's employment file *Page 3 
 e. Stipulated Exhibit #5 — Industrial Commission Forms and filings and Plaintiff's medical records
 f. Plaintiff's Exhibit #1 — Job search results
 g. Plaintiff's Exhibit #2 — Industrial Commission Rules for Rehabilitation Professionals
 h. Defendants' Exhibit #1 — Labor market survey
 i. Deposition transcripts of Dr. William S. Blau, Dr. Barbara L. Robinson, Dr. Donna J. Whitt, and Dr. T. Craig Derian.
 *********** ISSUES
Issues for determination include:
1. Whether Plaintiff has been appropriately paid indemnity and medical benefits in this claim?
2. Whether Plaintiff's employment was terminated in February 2010 due to violation of company policy?
3. Whether Defendants are entitled to reimbursement of one-half of the mediator's fee, which totaled $855.00 for the mediation conducted on April 27, 2010?
4. Whether Plaintiff is entitled to reinstatement of temporary total disability benefits following her termination from employment on February 6, 2010?
5. To what medical, disability, and other benefits is Plaintiff entitled?
6. What sanctions and penalties should be assessed against Defendants?
7. Following the hearing before the Deputy Commissioner, Plaintiff withdrew the issue of whether her hernia is compensable. *Page 4 
 *********** EVIDENTIARY RULINGS
The objections raised in the depositions are ruled upon in accordance with the law and the findings in this Opinion and Award. Plaintiff's hearsay objections regarding out of court statements of other employees attested to by Mr. Philips and Ms. Martin were sustained by the Deputy Commissioner. This evidentiary ruling is not on appeal before the Full Commission.
 ***********
Based upon a preponderance of the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of hearing before the Deputy Commissioner, Plaintiff was 56 years of age. Plaintiff has a high school diploma and has completed some college courses. Plaintiff also has an inactive real estate broker license. Her work history includes owning and operating a health spa, working in marketing with IBM, and real estate sales work from 2002 through 2007.
2. Plaintiff began work with Defendant-Employer in June of 2008. Her job duties included work as a pharmacy technician, sales associate, and cashier. She typically worked 40 hours per week, plus overtime, and occasionally worked seven days per week. Her job duties in all positions required her to bend, lift, and squat.
3. On April 6, 2009, while working as a pharmacy technician, Plaintiff was squatting and reaching into a low bin to retrieve medicine. She felt the sudden onset of low back, left hip, and groin pain. At first, she thought the pain would improve. When it did not go away, she reported her injury to Philip Parker, the store manager. *Page 5 
4. Defendants sent Plaintiff to Dr. Donna J. Whitt, a general practitioner affiliated with UNC Health Care. Dr. Whitt initially restricted Plaintiff to "no squatting, bending, or heavy lifting at work" on April 21, 2009. She took Plaintiff completely out of work on April 23, 2009. Dr. Whitt released Plaintiff to return to modified work, half time, with no lifting greater than ten pounds and no repetitive bending on May 5, 2009. Plaintiff returned to work in this part-time, modified capacity on May 8, 2009.
5. Thereafter, Defendants denied Plaintiff's workers' compensation claim. Plaintiff filed a request for a hearing. Ultimately, the parties entered into a consent order approved by Deputy Commissioner J. Brad Donovan on August 24, 2009. In relevant part, the consent order states:
 1. Defendants accept the claim pursuant to a Form 60 dated August 19, 2009 (left hip, leg and low back) and shall pay temporary total and temporary partial disability benefits as applicable from April 6, 2009 through the present and continuing per the Workers' Compensation Statute.
 2. Defendants shall pay all related medical expenses and reimburse Plaintiff for all related out of pocket expenses.
6. Following the consent order, Defendants issued Plaintiff a check for $277.66 representing nine days of temporary total disability benefits between April 30, 2009 and May 8, 2009, when Plaintiff was totally disabled from work following her injury. Defendants paid $715.16 representing temporary partial disability benefits from May 9, 2009 through August 15, 2009, when Plaintiff was back at modified work earning a reduced wage. Defendants also filed a Form 28T for Plaintiff's trial return to work beginning May 9, 2009.
7. Defendants have not paid any disability benefits to Plaintiff after August 15, 2009. Plaintiff requested a hearing on December 18, 2009, because Defendants were not paying temporary partial disability benefits pursuant to the consent order. *Page 6 
8. Dr. Whitt ultimately referred Plaintiff to an orthopaedist because of her persistent back pain. Plaintiff went to see Dr. T. Craig Derian on one occasion in August of 2009. Dr. Derian assigned medical restrictions of avoiding repetitive bending, lifting, stooping, or twisting, no lifting greater than 25 pounds, frequent changes of position, and to use judgment to limit activities to avoid increases in symptoms. However, Dr. Derian did not find Plaintiff to be a surgical candidate and referred her back to Dr. Whitt.
9. Dr. Whitt decreased Plaintiff's restrictions on November 25, 2009, to allow her to engage in full-time work with no lifting greater than 15 pounds, no repetitive lifting or bending, and avoid prolonged standing. Thus, Plaintiff increased her hours. However, Dr. Whitt later increased her restrictions again on January 27, 2010, to only 30 hours of work per week, no repetitive bending or prolonged standing, and no lifting greater than 10 pounds.
10. Plaintiff came under the care of Dr. William S. Blau, an anesthesiologist at UNC Hospitals, in March of 2010 on referral from Dr. Whitt. He diagnosed Plaintiff with sacroiliac joint problems. Dr. Blau treated Plaintiff's chronic pain by injecting her low back which helped improve her symptoms. As of the date of hearing before the Deputy Commissioner, Plaintiff still suffered low back pain, hip, and left leg pain. Dr. Blau continued to treat Plaintiff with injections as of the date of his post-hearing deposition. Dr. Blau opined that Plaintiff's back pain was more likely than not caused by Plaintiff's April 6, 2009 work injury and that to the extent that Plaintiff had any pre-existing low back pain, the April 6, 2009 work injury substantially aggravated or accelerated Plaintiff's condition. Dr. Blau further opined that Plaintiff should look for sedentary employment.
11. The medical treatment of Dr. Whitt, Dr. Derian, and Dr. Blau has been reasonable and necessary. *Page 7 
12. Plaintiff is not yet at maximum medical improvement. She requires ongoing medical treatment during normal working hours.
13. Near the end of 2009 into early 2010, a series of employment related matters arose between Plaintiff and the Defendant-Employer, the facts of which are disputed. Plaintiff was written up for a number of alleged wrongdoings, including insubordination, allegedly kicking a photo machine, and allegedly not paying for photographs. Plaintiff was ultimately terminated from her employment with Defendant-Employer. She last worked for Defendant-Employer on February 6, 2010.
14. Plaintiff's trial return to work in a modified capacity lasted from May 8, 2009 through February 6, 2010. This is a period of less than nine months. Accordingly, Plaintiff's trial return to work is deemed unsuccessful.
15. Defendants did not reinstate Plaintiff's temporary total disability benefits after her failed trial to return to work attempt.
16. Plaintiff's pre-injury job required prolonged standing and significant bending and stooping. The written job description indicates she would be required to lift up to 35 pounds. These requirements were outside of Plaintiff's restrictions from Dr. Whitt and Dr. Derian. The testimony of Dr. Whitt and Dr. Blau also establishes that Plaintiff's restrictions disable her from being able to perform her pre-injury job.
17. At all times during her trial return to work attempt, Plaintiff worked in a modified capacity. Additionally, Plaintiff's testimony shows that despite the job being modified, she still was required to engage in bending, standing, and stooping beyond her restrictions. The unsuccessful nature of Plaintiff's return to work was not due to her alleged misconduct, but *Page 8 
rather due to the unsuitable nature of the job she was performing, since the duties exceeded her work restrictions.
18. Defendants have presented insufficient evidence to prove that the modified job in which Plaintiff worked during her trial return to work constituted suitable employment.
19. After Plaintiff was terminated, she began looking for other work, both independently and through the Employment Security Commission. She was approved for unemployment benefits. In the approximate three months between her termination date and the hearing date before the Deputy Commissioner, Plaintiff had applied for 26 other jobs, but had not yet been offered a position.
20. While the misconduct issues are disputed and involve the testimony of multiple witnesses, including Plaintiff, Mr. Philip Parker (her supervisor), and Ms. Dawn Martin (Defendant-Employer's human resource officer), the misconduct allegations are not relevant because Plaintiff was working in a modified job which was not suitable employment. Irrespective of whether Plaintiff engaged in misconduct, she did not constructively refuse suitable employment.
21. Following her termination, Plaintiff made a reasonable, but unsuccessful, effort to find employment, entitling her to temporary total disability benefits. Even if Defendants proved she engaged in misconduct unrelated to her work injury for which an uninjured employee would have been terminated.
22. At the hearing before the Deputy Commissioner, Defendants called Mr. Anthony Enoch, a vocational consultant, to testify about a labor market survey he performed. Mr. Enoch has never met Plaintiff. The labor market survey does not include any data about the physical requirements of the jobs he identified. He was unaware of relevant medical restrictions. This *Page 9 
labor market survey is given little weight, and it does not rebut Plaintiff's presumption of disability or evidence of disability.
23. During Plaintiff's trial return to work attempt, Plaintiff earned less than pre-injury wages for significant periods of time. However, following August 15, 2009, Defendants failed to pay any temporary partial disability benefits.
24. The Consent Order, requiring Defendants to pay temporary partial disability benefits, and the fact that Plaintiff remained under restrictions from Dr. Whitt at all times during her trial return to work attempt establish the causal relationship between Plaintiff's wage loss and her compensable injury. Additionally, Defendants have failed to prove that Plaintiff intentionally depressed her wages.
25. The wage records show from August 16, 2009 through November 22, 2009, Plaintiff earned $3,569.80. Had she been paid her pre-injury wage of $323.93 during this 14 week period, she would have earned $4,535.02. Two-thirds of the difference between her pre-injury wage and her actual wage for this period is $643.51. For the period of November 23, 2009 through January 3, 2010, Plaintiff earned $1,233.53. Had she been earning her pre-injury wage, she would have been paid $1,619.65 during this five-week period. Two-thirds of the difference between her actual wage and her pre-injury wage is $257.43. This totals $900.94 in temporary partial disability benefits owed for the periods following August 15, 2009 through the date of Plaintiff's termination from employment.
26. Defendants did not defend this case without reasonable grounds on the issues of Plaintiff's entitlement to temporary total disability benefits and temporary partial disability benefits. *Page 10 
27. Defendants are entitled to reimbursement of one-half (1/2) of the mediator's fee, which totaled $855.00 for the mediation conducted on April 27, 2010.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. When an injured worker is awarded temporary total disability benefits in an Opinion and Award of the Industrial Commission, the injured worker is entitled to a presumption of continuing disability. Watkins v. Central Motor Lines, Inc.,279 N.C. 132, 137-38, 181 S.E.2d 588, 592 (1971). The August 24, 2009 consent order gave Plaintiff the presumption of disability. Id.
2. A trial return to work under N.C. Gen. Stat. § 97-32.1 does not rebut the presumption of disability. Stamey v. N.C. Self-Insurance Guar. Ass'n.,131 N.C. App. 662, 507 S.E.2d 596 (1998). N.C. Gen. Stat. § 97-32.1 states that if a trial return to work is unsuccessful, "employee's right to continuing compensation under G.S. 97-29 shall be unimpaired unless terminated or suspended thereafter pursuant to the provisions of this Article."
3. As Plaintiff's trial return to work lasted less than nine months, she retained the presumption of disability after the trial return to work ended on February 6, 2010. N.C. Gen. Stat. § 97-32.1. As of that date, Plaintiff was entitled to automatic reinstatement of temporary total disability benefits.Davis v. Hospice Palliative Care ofWinston-Salem, ___ N.C. App. ___, 692 S.E.2d 631 (2010).
4. The presumption of disability shifts the burden of proof to Defendants to present evidence rebutting the presumption of disability. Radica v. Carolina Mills, 113 N.C. App. 440, 447, *Page 11 439 S.E.2d 185, 190 (1994); Kennedy v. DukeUniv. Med. Center,101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990).
5. Defendants have failed to rebut the presumption of disability in this case for the period following February 6, 2010. Thus, Plaintiff is entitled to ongoing temporary total disability benefits at the weekly compensation rate of $215.96. N.C. Gen. Stat. § 97-29; Roset-Eredia v. F.W. Dellinger,Inc., 190 N.C. App. 520, 660 S.E.2d 592 (2008); Saums v.Raleigh Comm. Hosp., 346 N.C. 760, 487 S.E.2d 746 (1997).
6. Even if Plaintiff had the burden of proof, she still successfully established disability through a reasonable, but unsuccessful, job search. Hooker v. Stokes-Reynolds Hospital,161 N.C. App. 111, 587 S.E.2d 440 (2003); Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
7. Plaintiff is entitled to reasonable and necessary medical care for her compensable back, hip, and left leg pain. N.C. Gen. Stat. § 97-25. Dr. Whitt and Dr. Blau are hereby designated as Plaintiff's authorized treating physicians. N.C. Gen. Stat. § 97-25.
8. Evidence of a Plaintiff working for lower wages after an injury, "while not dispositive of disability, shifts the burden to the employer to establish that the employee could have obtained higher earnings." Larramore v. Richardson Sports, Ltd.Partners, 141 N.C. App. 250, 540 S.E.2d 768 (2000), aff'd percuriam, 353 N.C. 520, 546 S.E.2d 87 (2001). Defendants have failed to prove Plaintiff is not entitled to temporary partial disability benefits. From August 16, 2009 through November 22, 2009, Plaintiff earned $3,569.80. If she had been paid her pre-injury weekly wage of $323.93 during this 14-week period, she would have earned $4,535.02. Two-thirds of the difference between her pre-injury wages and her actual wages for this period is $643.51. For the period of November 23, 2009 through January 3, 2010, Plaintiff earned $1,233.53. *Page 12 
Had she been earning her pre-injury wages, she would have been paid $1,619.65 during this five-week period. Two-thirds of the difference between her actual wages and her pre-injury wages is $257.43. This totals $900.94 in temporary partial disability benefits owed for the periods following August 15, 2009 through the date of Plaintiff's termination from employment. Therefore, as a result of Plaintiff's compensable injury, Plaintiff is entitled to $900.94 in temporary partial disability benefits for the period of August 16, 2009 through the date of her termination. N.C. Gen. Stat. § 97-30.
9. Defendants are entitled to a week by week credit for any unemployment benefits paid to Plaintiff. N.C. Gen. Stat. § 97-42.1.
10. Plaintiff's counsel has provided valuable legal services and is entitled to a reasonable attorney's fee. N.C. Gen. Stat. § 97-90.
11. Defendants did not defend this case without reasonable grounds, and thus Plaintiff is not entitled to reasonable attorney's fees and litigation expenses. N.C. Gen. Stat. § 97-88.1.
12. Defendants are entitled to reimbursement of one-half of the mediator's fee, which totaled $855.00 for the mediation conducted on April 27, 2010, which may be deducted from the sums due Plaintiff as awarded herein. Industrial Commission Rules for MediatedSettlement and Neutral Evaluation Conferences Rule 7 (c).
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 A W A R D
1. Subject to a reasonable attorney's fee approved herein, Defendants shall pay Plaintiff temporary total disability compensation at the weekly compensation rate of $215.96 *Page 13 
from February 6, 2010 through the present and ongoing until further Order of the Commission. All accrued amounts shall be paid in one lump sum to Plaintiff.
2. Dr. Whitt and Dr. Blau are hereby designated as Plaintiff's authorized treating medical providers. Defendants shall pay the medical expenses incurred or to be incurred by Plaintiff as a result of her compensable back, hip, and left leg condition.
3. Subject to a reasonable attorney's fee approved herein, Defendants shall pay Plaintiff temporary partial disability compensation in the amount of $900.94 for the period of August 15, 2009 through February 6, 2010.
4. As a reasonable attorney's fee, Defendants shall pay to Plaintiff's counsel an attorney's fee in the amount of twenty-five percent (25%) of all unpaid accrued back due benefits in one lump sum and shall forward to Plaintiff's counsel every fourth future compensation check due the Plaintiff as his fee.
5. Plaintiff shall reimburse Defendants for one-half of the mediator's fee, which totaled $855.00 for the mediation conducted on April 27, 2010. Said amount shall be deducted from the sums due Plaintiff as awarded herein.
6. Defendants shall bear the costs.
This the 19th day of September, 2011.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING: *Page 14 
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ BERNADINE BALLANCE COMMISSIONER *Page 1